167 N.J. Super. 441 (1979)
400 A.2d 1233
BEATRICE ROSS, PLAINTIFF,
v.
ROBERT E. ROSS, JR., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 2, 1979.
*442 Mr. Joseph S. Trapanese for plaintiff.
Mr. Gregory Aprile for defendant.
CONN, J.D.C. (temporarily assigned).
This post-divorce controversy focuses on the recurring question of the outer limits of a support obligation for a child who has attained majority. Continuing education of the child, through enrollment in a college, university or other post high school training program, has already been established as a possible basis for prolonging the noncustodial parent's support obligation beyond the age of majority. See Khalaf v. Khalaf, 58 N.J. 63 (1971); Limpert v. Limpert, 119 N.J. Super. 438 (App. Div. 1972); Jonitz v. Jonitz, 25 N.J. Super. 544 (App. Div. 1953); Schumm v. Schumm, 122 N.J. Super. 146 (Ch. Div. 1973), and Straver v. Straver, 26 N.J. Misc. 218 (Ch. 1948).
*443 In this controversy the continuing education concept moves to the next level. For at issue here is the question of whether graduate school enrollment should likewise be construed as sufficient grounds for prolonging the noncustodial parent's support obligation, in this case for a 23-year-old, only child of a marriage. The question is a novel one in New Jersey.
Plaintiff mother, by judgment of divorce of October 19, 1973 and under an agreement made a part of that judgment, was to receive $17.50 a week from the defendant father for the support of the child, Jane, "until emancipated."
Jane is now completing her first year of law school at Seton Hall University, to which she commutes as a full-time student. She graduated Seton Hall University in May 1978, obtaining a Bachelor of Arts degree, magna cum laude. Defendant father continued the support payments until the week after Jane graduated college. Plaintiff mother thereafter moved to compel defendant to continue that support for Jane until she completes law school. Defendant objected; memos were submitted. Thereafter a plenary hearing was held and the following factual picture, essentially uncontroverted, developed.
As a high school student Jane indicated an early interest in becoming a lawyer. The testimony revealed that she had shown an interest in government and history and was advised by guidance counselors to consider pursuing a law career. The parties separated in 1972 when Jane was 15 and a sophomore in high school. She has always been in the custody of plaintiff mother. There was no persuasive proof that defendant was ever included in discussions with Jane as to her desires for a law career. The father was invited to and attended her high school graduation in 1974, but has not seen her again until these proceedings. The father never sought visitation with his daughter other than to tell her, at the time of separation in 1972, that "his door was always open to her." Likewise, Jane never took affirmative steps for visitation with her father and stated that her father always sent her a card with a money gift for her birthday and at Christmas. She *444 always sent him a "thank you" note in which she briefly would describe her current activities.
At the divorce hearing in 1973, when the terms of the support obligation were reviewed, plaintiff testified that Jane would probably be going to law school. Nevertheless, there was no understanding reached with regard to how long support would continue.
The father is a chemical worker who earns approximately $16,000 a year. He has remarried and his present wife works. They own their own home and are presently supporting a daughter of defendant's present wife from her prior marriage. Neither party produced any evidence of professional training or of any post-high school education.
Plaintiff is a bookkeeper and earns approximately $12,000 a year. She has not remarried. She has paid and continues to pay for both college and law school, including all fees, tuition costs and books.
At the outset the father claims that he is entitled to a ruling, as a matter of law, that the maximum period for which support should continue would be up to graduation from an accredited college or university. He insists there must be a limit and that the cases, when analyzed, all suggest the completion of college as the outer limit of the support obligation. The argument continues that even if law school was the clearly established goal, there is nothing to prevent the child in question upon graduation from college from going to work and attaining her graduate degree by going to law school part-time.
However, a review of the case law on the subject, specifically, Khalaf v. Khalaf, 58 N.J. 63 (1971), and other cases cited therein, suggests that the question is an open one in which the court is free to apply various tests to assess the overall situation as to what the reasonable expectations are, the parties' means, etc., and what obligation, if any, there should be on the noncustodial parent. In short, the court is satisfied that there is no clearly established cut-off date that would entitle the father to a ruling as a matter of law. Admittedly, *445 there is no reported decision on this precise question in New Jersey, but several New Jersey courts have noted that "There is no age fixed in the law when a child becomes emancipated." Schumm v. Schumm, supra 122 N.J. Super. at 150, and Limpert v. Limpert, supra 119 N.J. Super. at 440.
With regard to the argument that the professional goal can be attained by part-time school attendance while also working, the answer is simply that the decision belongs to the child and the custodial parent. Our courts have long since noted that it is the custodial parent who is invested with the discretion regarding the method and means of educating the children. Subject to the issue such as that which is before the court, and also subject to the claim that certain decisions regarding the method of education are being made to harass or spite the noncustodial parent  the noncustodial parent has no right to insist on alternative ways of accomplishing the goal. See Straver v. Straver, supra.
Before listing and analyzing the various factors that must be considered, the court believes that there is the following threshold question: Had there not been a separation and divorce, would the parties, while living together, have sent their daughter to law school and financed that schooling? It would seem clear from the facts, particularly the respective incomes of the parties; the fact of only having one child, and the early indicators in this case of Jane's interest in law school, that the parties, in all probability, would have financed Jane's law school education. It should be pointed out, however, that the fact that that question is answered in the affirmative, should in no way be dispositive of the issue.
The court believes that the various factors that have to be considered are the following:
1. The amount of support (or school cost) sought.
2. The ability of the noncustodial parent to pay that cost, and its relation to the type of schooling sought.
3. The financial position of the custodial parent.
*446 4. The commitment and aptitude of the child to the schooling in question.
5. The child's relationship to the noncustodial paying parent.
6. The relationship of the schooling in question to any prior training and, generally, the relationship to the overall, long-range goals of the child.
Applying these factors to the case at bar, the following conclusions and findings are made:
1. As to the amount of support, considering the sum of $17.50, the defendant's ability to pay and his present financial position and obligations, it is fairly obvious that a finding can and is made that the amount involved would not be a serious financial burden. (It is important to note that this is not a demand by plaintiff for assistance to defray the cost of the schooling; it is limited strictly to a request for a continuation of the original support and nothing else.)
2. and 3. As already indicated, the father's present situation shows that a continuing obligation through Jane's law school period of $17.50 weekly would not be onerous. It would appear from the efforts of plaintiff that some assistance is called for. Plaintiff has been paying the cost of college and law school, and the facts indicate that over the four years at Seton Hall the total expense, with commuting and tuition and books and the like, was in excess of $12,000. While in college the daughter obtained a scholarship for approximately $2,600, also some college grants totalling over $1,200, a student loan under the National College Loan Program of approximately $3,500, and a bank loan for law school of an additional $2,500. Thus, plaintiff has laid out, at the college level, at least, something in the neighborhood of $5,000 over those four years, the rest being defrayed by scholarships, grants and loans. Certainly the fact that plaintiff has not remarried and is earning in the neighborhood of $12,000 a year justifies a finding that assistance is needed.
4. The commitment of Jane to the schooling in question is easily established. Her early interest in law school has already been indicated. The mother's testimony before the *447 trial court in 1973 is referred to again, showing that the mother assumed her daughter would be going to law school. There was also offered in evidence a copy of a letter that plaintiff sent to her husband's brother enclosing tickets to Jane's high school graduation. In that letter the brother was advised of Jane's interest in a law career. In addition to the commitment in terms of its duration, the record shows that Jane graduated college with honors, and thus there can be no quarrel with her zeal and performance at the college level.
The testimony further shows that Jane has played a role in assisting with the expense of the schooling. The law school has a rule that limits full-time students to working no more than 15 hours a week. Jane testified that she takes advantage of this 15 hours and works as a waitress at a country club on weekends, earning approximately $56 a week which she puts towards her transportation and miscellaneous school costs. Thus Jane's commitment, both in and out of the classroom, is clearly established. This finding of Jane's commitment to assist in the cost, coupled with the other findings made as to the parents' means, as well as the fact that Jane commutes to school, thereby eliminating the requirement for room and board at school, are sufficient reasons to overcome the contentions that in this case going to law school full-time is an unnecessary luxury.
5. According to the record, both Jane and her father may best be characterized as "distant and passive" in terms of their relationship with one another. Contact has been minimal, for neither Jane nor her father has actively sought visitation nor refused visitation.
It is conceivable that, in a given situation, a child's arbitrary refusal to respond to the sincere visitation efforts of a non-custodial parent might significantly affect the outcome of the question of continued support. In this case, however, there is nothing in the father-daughter relationship to influence that decision one way or another.
6. That law school training is a prerequisite for the attainment of Jane's career objective is axiomatic. Further, *448 the fact that the career goal was established during Jane's high school years supports the conclusion that the law school training is not being sought to manipulate the extension of support payments.
The court is satisfied, therefore, based on the findings made, that Jane cannot be considered emancipated until such time as her law school training ends, either through voluntary or involuntary withdrawal or upon graduation. Therefore, the court concludes that defendant father's obligation to pay child support be maintained through that law school period.
However, in view of the fact that the question is a novel one and because there has been a delay in finally concluding this matter, which delay was not the fault of either party, the court is satisfied that the father's obligation for support, which normally would have continued right through Jane's college graduation, will be retroactive to September 15, 1978. The court selects that date as the time in which Jane's law school training probably got under way. The arrears shall be computed by counsel and stated in the form of an order to be submitted in accordance herewith and defendant is ordered to pay the arrears in two equal payments, one due on or before May 15, 1979 and the balance due on or before July 30, 1979. The obligation of $17.50 a week support shall continue as just stated from that retroactive date through the law school training period, at which time it ceases permanently. Nothing herein should be deemed to suggest that the obligation is suspended during the nonschool months.