178 N.J. Super. 623 (1981)
429 A.2d 1091
JOHN SAKOVITS, PLAINTIFF,
v.
DORRIS V. SAKOVITS, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided February 3, 1981.
*625 Robert Passero for plaintiff (Raff & Passero, attorneys).
Anthony J. Den Uyl for defendant.
KRAFTE, J.J.D.R.C. (temporarily assigned).
Defendant makes this application by way of motion, seeking contribution from plaintiff toward the college education of the children. The issue this court is called upon to determine is to what extent, if at all, can a child, formally emancipated by court *626 order, call upon his/her parents to contribute to the child's support. There is no reported New Jersey decision which deals precisely with the question presented to this court herein.
Plaintiff husband and defendant wife were divorced in 1969. The final judgment was signed on July 17, 1969, which provided in part that plaintiff shall pay to defendant a total of $50 a week for the support and maintenance of the two infant children of the marriage, Carl and John.
It is important to note that at the time of this application John was 21 years of age and Carl 18. Based upon the affidavits and financial statements submitted, this court entered an order on July 24, 1980 requiring plaintiff to contribute approximately $4,500 to Carl's college education (which plaintiff stated he had set aside for such purpose) plus one-quarter of Carl's annual tuition. A determination as to John was reserved pending the receipt of further information relevant to John's employment and residence since he graduated high school, a statement of his assets and the cost of his tuition. This court also noted that support payments for John ceased in 1977 and requested any available documentation indicating the basis thereof.
Among the supplemental documents received was an order of July 18, 1977 which declared John to be emancipated and extinguished plaintiff's obligation to support him. The information submitted established that John has continuously been employed and has maintained his own residence since his emancipation. He only occasionally stayed at his mother's residence to visit her on weekends. He is at present 22 years of age and earns approximately $200 a week. Upon his graduation from high school John did not wish to attend college and, after conveying his intentions to plaintiff, plaintiff gave him some $3,200 to enable him to start his own business.
This court first notes that defendant has brought this application for contribution on behalf of her son. We question her right to do so, given John's age of 22. However, since the entire controversy has been fully presented, this court will take jurisdiction and rule.
*627 It is now elementary that a duty is imposed by statute upon a parent to support a child. In addition to N.J.S.A. 2A:34-23, N.J.S.A. 9:2-4 provides in pertinent part that the parents are "equally charged with their care, nurture, education and welfare...." This duty has been stated in case law as well. Cohen v. Cohen, 6 N.J. Super. 26 (App.Div. 1949); Grotsky v. Grotsky, 58 N.J. 354 (1971); Clayton v. Muth, 144 N.J. Super. 491 (Ch.Div. 1976).
Blackstone described the duty of a parent to support their minor children as "a principle of natural law." 1 Blackstone, Commentaries, 447. Such duty is based on both a natural and legal incapacity, and the child's consequent need of protection and care. Kern v. Kern, 360 So.2d 482, 484 (Fla.App. 1978).
As a general rule, a parent is under no duty to contribute to the support of his child after the child has become emancipated Schluter v. Schluter, 17 N.J. Super. 496 (Ch.Div. 1951) mod. 23 N.J. Super. 409 (App.Div. 1952) certif. den. 11 N.J. 583 (N.J. 1953); Cohen v. Cohen, 6 N.J. Super. 26 (App.Div. 1949); Eisler v. Toms, 160 N.J. Super. 272. Most recently this rule manifested itself in the case of C v. R., 169 N.J. Super. 168 (Ch.Div. 1979), where the court stated:
The duty to support minor children ordinarily ceases upon emancipation by age, marriage, self-sufficiency or upon termination of parental rights. [at 179]
However, exceptions to this rule were anticipated by the court in Cohen, supra.
Ordinarily, the obligation of the parent to support ends when the child reaches full age, although it might continue indefinitely if the child were crippled or unable to support himself. In many cases, the obligation terminates when the child is around 18 years. [Amos] v. [Amos], 4 N.J. Eq. 171 (Pennington, C., 1842); Snover v. Snover, 13 N.J. Eq. 261 (Green, C., 1861); 1 Biggles, Com. 449. It is probably safe to say that when the family situation is such that, had there been no divorce or separation, the child would have gone to work and become self-supporting before attaining age 21, the duty of the parents under the statute likewise terminates while the child is still a minor. On the other hand, in a family where a college education would seem normal, and where the child shows scholastic aptitude and one or other of the parents is well able financially to pay the expense of such an education, we have no doubt the court could order the payment. [6 N.J. Super. at 30]
*628 Two exceptions have subsequently been carved out. The first was recognized in Kruvant v. Kruvant, 100 N.J. Super. 107 (App.Div. 1968), which imposed a continuing duty on a parent to care for an adult son suffering from physical or mental deficiencies which pre-existed his attaining majority. At the time of the application the son was 25 years of age. The husband was requested at the suit of his former wife to contribute to the cost of the son's necessary care and maintenance.
The "college education" exception is the second incursion. It has received a great deal more attention, not only in our own State but throughout the country. See 99 A.L.R.3d 322.) It is this exception upon which defendant relies. Under this exception a parent may be required to contribute financially to the college education of a child even though the child has reached majority.
Our court in Jonitz v. Jonitz, 25 N.J. Super. 544 (App.Div. 1953), recognized this power, after considering all relevant circumstances, as requiring a parent to provide his child with a college education, after reaching majority. In so holding the court made reference to what was perhaps the earliest reported decision in the country in this area, Middlebury College v. Chandler, 16 Vt. 683 (Sup.Ct. 1844). The court in Middlebury found that a college education was not a necessity for which a parent would be required to contribute but pointed out, in effect, as the Jonitz, decision noted,
... the term "necessary" is a relative and flexible one and seemingly contemplated the expansion of educational opportunities to the studious and talented. [25 N.J. Super. at 544, 555]
This trend of including college expenses in child support proceeded one step further in Khalaf v. Khalaf, 58 N.J. 63 (1971), where the court held:
The concept of what is a necessary education has changed considerably in recent years. While a "common public school and high school education" may have been sufficient in an earlier time, see Ziesel v. Ziesel, 93 N.J. Eq. 153 (E.A. 1921), the trend has been towards greater education. Our courts have recognized this trend by including the expenses of a college education as part of child support where the child shows scholastic aptitude and the parents are well *629 able to afford it. Malkin v. Malkin, 12 N.J. Super. 496 (App.Div. 1951); Cohen v. Cohen, 6 N.J. Super. 26, 30 (App.Div. 1949); Nebel v. Nebel, supra [99 N.J.Super 256]. See also Jonitz v. Jonitz, 25 N.J. Super. 544, 556 (App.Div. 1953); Hoover v. Voigtman, 103 N.J. Super. 535 (Cty.Ct. 1968); see generally Annotation, "Divorce  Support of Child  Education" 56 A.L.R.2d 1207, 1220. We agree with the cases which include these expenses in child support where appropriate. [at 71-72; emphasis supplied]
Khalaf has become the leading case in New Jersey in this area.
Subsequent to Khalaf came Schumm v. Schumm, 122 N.J. Super. 146 (Ch.Div. 1973), in which the child had clearly exhibited scholastic aptitude for attendance at college and made an effort to contribute to his own education. Although relying on Khalaf, the court noted:
It is the responsibility of the custodian of a child to supervise his care, control, maintenance and education. Such custodian has the right to determine the kind of education which is suitable for the child so entrusted to its care. When there is insufficient money available for either parent to afford college expenses but the custodian and the child are willing to work toward providing a better education for him, even though the cost of education may not be assessed against the father, this court is invested with the power and authorization to continue the father's obligation to support the child when he pursues that college education. [at 150. This is the rationale in Straver v. Straver, 26 N.J. Misc. 218 (Ch. 1948) and Limpert v. Limpert, 119 N.J. Super. 438 (App.Div. 1972)]
The trend in requiring the noncustodial parent to contribute to the college education of his/her children was taken one step further most recently in Ross v. Ross, 167 N.J. Super. 441 (Ch. Div. 1979). In Ross Judge Conn found that under the circumstances there present the 23-year-old daughter of the parties was not emancipated until such time as her law school training ended. The court established a threshold question in cases of this nature, which this court believes is applicable here:
Had there not been a separation and divorce would the parties, while living together, have sent their daughter to law school and financed that schooling? [at 445]
The court concluded:
It would seem clear from the facts particularly the respective incomes of the parties; the fact of only having one child, and the early indicators in this case of Jane's interest in law school, that the parties, in all probability, would have financed Jane's law school education. [Id.]
The concern of this court in establishing this threshold standard is its sensitivity to the problem which may arise by requiring *630 divorced parents to contribute to the college education of their children when, had the parents remained together, they could not be required to do so. If the court so held, we would in effect place upon the divorced parent a greater obligation to support his children than he would have in the absence of divorce. The Florida court in Kern v. Kern, 360 So.2d 482 (Ct.App. 1978), recognized a very basic flaw in this situation:
... Such an interpretation may give rise to valid constitutional infirmities in that the state would have no reasonable grounds to treat the adult children of divorced parents any different than adult children of married parents.... [at 485].
As pointed out in Ross, supra, an affirmative answer to this threshold question is in no way dispositive of the issue. The court there listed the following factors which should also be considered:
1. The amount of support (or school cost) sought:
2. The ability of the noncustodial parent to pay the cost, and its relation to the type of schooling sought;
3. The financial position of the custodial parent;
4. The commitment and aptitude of the child to the schooling in question;
5. The child's relationship to the noncustodial, paying parent, and
6. The relationship of the schooling in question to any prior training and generally, the relationship to the over-all long range goals of the child. [167 N.J. Super. at 445]
To this list this court believes it is important to add some further considerations especially applicable to the college education situation:
1. The reasonableness of time between graduation from high school and the time the child desires to attend college, and
2. Based on the parents' educational and social backgrounds, the expectation on behalf of the parents that the child would attend college.
A common situation we must confront today is where, after high school graduation, the child takes a year or more hiatus from school to travel or work before attending college. The intentions of the child of returning to college in such instance is usually made known to the parents and they, therefore, would still reasonably expect that child would go to college. An agreement or general understanding between the parents and child that there would be such hiatus may also be important.
*631 The enumerated exceptions, unfortunately, do not specifically address the question here presented, i.e., to what extent can a child, once formally emancipated, call upon his/her parents for support. In none of the cases which the parents were required to support their children past the children's majority was a formal declaration of emancipation entered prior to the application.
This court believes it would be propitious to extend this trend of requiring contribution to the college and/or professional education of children to cases where the child has at one point been formally declared to be emancipated, as a blanket proposition. The same considerations present in Hover, Cohen, Schumm, Limpert, Nebel, Khalaf and Ross, supra, and those mentioned herein, would be applicable in the situation where the child had at one point been declared emancipated.
This is especially important in today's society, as mentioned earlier, where a brief hiatus between high school and college is becoming commonplace. During the hiatus the child may very well move out of the parental home and attain full-time employment, with the noncustodial parent successfully applying to have the child declared emancipated. If we were to hold that the college education exception should not be extended to situations where the child had been declared emancipated, then the child would forever be estopped from seeking such contribution from his parents. This court deems such a situation to be totally inequitable. When a declaration of emancipation is entered, all a judge has before him are the facts as they exist at that time. This court, therefore, finds that upon an affirmative determination of the heretofore-mentioned considerations, and regardless of the fact the child may have been formally declared emancipated, the parents may in a given case be called upon to contribute to the college education of such child.
With these guidelines in mind we now proceed to an analysis of the facts present in the present case. Initially, this court *632 finds that a college education would have been made available to John at the time of his graduation from high school, were he then so inclined. Between grants, loans and parental contributions, an education would have been forthcoming.
It is when we consider the second phase of the determination that we encounter difficulty in compelling plaintiff to contribute to John's education. Four years have elapsed since John's graduation from high school. During this period John has continuously lived independently and, although holding various jobs, has remained for the most part continuously employed. We again stress that John expressed no interest in a college education when he graduated from high school. Plaintiff, recognizing this, and still desirous of assisting John in establishing himself, gave him some $3,200. It is also clear that plaintiff has structured his financial future, realistically relying upon these circumstances.
As previously stated, this court does not hesitate to extend the Ross and Khalaf rationale to situations where there has been a formal declaration of emancipation. A reasonable limitation must, however, be established in cases of this nature. This scenario does not lend itself to a cut-and-dried rule; to suggest one is entirely inappropriate. Equity dictates that the court carefully examine the facts present in each case in light of the considerations catalogued herein and those in Ross and Khalaf.
Considering all of these factors, this court encounters severe obstacles in sustaining defendant's position. To require contribution would strain the college exception beyond those situations it could reasonably have been intended to cover. To permit such extension of this doctrine would create an unreasonable, open-ended burden on parents who, at any stage of their lives, could be called upon to finance a college education. In light of the facts present here, this court deems it inappropriate to require plaintiff to contribute to John's college education.