FREDERICK C. BRAUN, JR., AND MARJORIE W. BRAUN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Braun v. Commissioner
Docket No. 11619-82.
United States Tax Court
T.C. Memo 1984-285; 1984 Tax Ct. Memo LEXIS 386; 48 T.C.M. (CCH) 210; T.C.M. (RIA) 84285; May 30, 1984. *386 Held: Income from grantor trusts taxed to grantor-petitioners. Leonard M. Atlas, for the petitioners. William F. Halley and William S. Garofalo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in income tax against petitioners for the years and in the amounts as follows: Year
Deficiency
1976
$3,374.99
1977
4,936.64
1978
3,403.95
There are essentially two issues in this case, whether income from two grantor trusts established by petitioners for the benefit of their children (three children being the beneficiaries of one trust and the other three children the beneficiaries of the second trust) is taxable to petitioners and whether Frederick C. Braun, Jr., received constructive dividend income by reason of the purchase by the professional medical corporation in which he is a shareholder of a subordinated loan certificate. As to the second issue, petitioners and respondent have agreed to be bound by the final decision in the case of Heitner v. Commissioner, docket No. 347-82. [1] *387 For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and they are so found. Petitioners are husband and wife and at the time the petition in this case was filed they both resided in the State of New Jersey. Timely joint Federal income tax returns for each of these taxable years were filed by petitioners. Dr. Braun, during the years at issue, was a physician licensed by the State of New Jersey and was a 25 percent shareholder and practiced medicine as an employee of Westfield Pediatric Office, P.A. (Westfield), a New Jersey professional service corporation. During the years at issue, Westfield utilized two offices, one of which was in a designated separate portion of the residence of petitioners. The other office was similarly located in the residence of Dr. Kalbacker, who was also a member of Westfield. Petitioners have six children whose first names and dates of birth are as follows: Children's Names
Date of Birth
Stephen
December 29, 1958
Kathleen
November 5, 1963
Christopher
August 27, 1961
Cynthia
May 8, 1956
Fred
June 1, 1957
Timothy
April 16, 1966
By agreements *388 dated June 25, 1973, that are identical except for the names of the three children and the name of each trust, petitioners established grantor trusts for Cynthia, Fred and Timothy (Trust I) and for Stephen, Kathleen and Christopher (Trust II). Each trust is to terminate upon the passage of 10 years and 6 months from its date or upon the death of the beneficiary [2] *389 or the deaths of its grantors. During the term of each trust the entire net income is to be distributed to the three children for whom each trust was established with any undistributed income on termination to be distributed to the beneficiary. On termination the principal is distributed to the grantors. Each trust is stated to be irrevocable and grantors warrant in the trust that they did not "retain the power to control the beneficial enjoyment of the income or corpus" within the meaning of section 674 of the Internal Revenue Code. [3] Each trust is to be construed under the laws of the State of New Jersey. The corpus of each trust is described as one-half of the space in petitioners' residence occupied by Westfield. The trustees of each trust were petitioners and Edmund V. Torres, a friend of petitioners'. Westfield was incorporated on August 22, 1972, and is the successor to a partnership, as members of which Drs. Braun and Kalbacker both practiced medicine from the same two offices. From the date of incorporation of Westfield to the date of establishment of the two trusts, Westfield paid rent to petitioners (and to Dr. Kalbacker). From June 25, 1973, through the years here in issue, Westfield paid rent to petitioners as trustees of the two trusts. The record contains written leases between petitioners as trustees [4] and Westfield, each for a one-year term, covering the periods July 1, 1975, through June 30, 1976, and July 1, 1976, through June 30, 1977. We assume that there was no written lease for prior periods. There was no formal conveyance by petitioners as the owners of the residence which contains the *390 Westfield office to either of the two trusts. Neither did petitioners execute a written lease of the Westfield space to the trusts. No gift tax returns were filed by petitioners with respect to the transfers to the two trusts. For the years 1976, 1977 and 1978, petitioners claimed on their individual tax returns depreciation, utilities, and gardening and cleaning expenses with respect to the space occupied by Westfield in their residence. During each of the three years, the income of each of the trusts and the disbursements made by each trust collectively for the benefit of each trust's beneficiaries are reflected by the following table: Trust I
Income: Years
Income
Disbursements
1976
$3,404.64
$2,998.00
1977
3,400.60
3,581.77
1978
3,375.00
2,884.90
$10,180.24
$9,464.67
Trust II
Income: Years
Income
Disbursements
1976
$3,406.02
$3,355.00
1977
3,420.18
3,915.00
1978
3,375.00
3,262.00
$10,201.20
$10,532.00
All of the distributed income was used for educational purposes. In 1976, 1977 and 1978, from Trust I the disbursements were for college tuition, room and board for Cynthia and Fred, two of the three beneficiaries of that trust. Both children were over 18 years of age in 1976. In 1976 the income from Trust *391 II was used for tuition at the private high school attended by two of that trust's beneficiaries, Stephen and Christopher. In 1977 and 1978, a portion of the Trust II income was used for tuition, room and board of Stephen at college and a portion for Christopher at the private high school. During these years, none of the income was used for one beneficiary of each trust. Stephen became 18 in December of 1976, whereas Christopher did not become 18 until 1979. Respondent contends that the purported transfer to each of the two trusts was an anticipatory assignment of income, that petitioners as grantors retained the power together with a nonadverse party to control the beneficial enjoyment of the trust income within the meaning of section 674, that the trusts' payment of the childrens' educational expenses, both at colleges and the private high school, constituted a distribution in satisfaction of petitioners' support obligation within the meaning of section 677(b), and that the payment of tuition constituted a distribution in satisfaction of petitioners' implied contractual obligations to pay tuition, room and board for their children. Respondent also asserts that if we should find *392 for petitioners on these issues, an alternative issue will arise which is the entitlement of petitioners to the deductions during these years which relate to the premises occupied by Westfield. Neither party has raised or briefed the question as to whether or not under the laws of New Jersey petitioners would be considered to have made an oral lease to the trustees of the two trusts of the premises occupied by Westfield, which lease might have supported a sublease by the two trusts to Westfield. On this incomplete record, we prefer to refrain from deciding the anticipatory assignment of income theory, since we can otherwise completely dispose of the case. Neither do we feel that the facts in this record as to the contractual obligations, if any, of either of petitioners to the respective colleges and private school form a satisfactory basis for decision, especially since petitioners did not discuss this issue on brief. Also, this issue appears to have been raised for the first time in respondent's brief. In the statutory notice, respondent determined that the trusts were not "valid taxable entities" and that petitioners exercised dominion and control in violation of sections 671 *393 through 687. The petition asserts and the answer denies that the trusts are valid entities. Although petitioners have not argued any question as to the burden of proof, we have some doubt that either the assignment of income or the contractual obligation theory is subsumed within the valid taxable entity determination. Under these circumstances, we prefer to focus on the two trust issues on which petitioners have primarily focused, whether the income of the two trusts was taxable to petitioners under section 674 by reason of the grantors having the power exercisable by them and by a nonadverse party to control the disposition of the income or whether under section 677(b) use of the income for education expenses of the children discharged the support obligation of Dr. Braun. On Each of these issues, we find for respondent. Respondent assumes that Mr. Torres is not an adverse party. The term "adverse party" is defined in section 672 to mean "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which be possesses respecting the trust." A nonadverse party means any party who is not an adverse *394 party. We agree with respondent that Mr. Torres is not an adverse party. Thus, under section 674(a), the issue is whether or not the grantors as trustees, along with Mr. Torres, retained the power to sprinkle the income among the three beneficiaries of each of the two trusts. [5]
The trust instrument does not prescribe the shares of each of the three beneficiaries of each trust in the income. While one might tend to assume that each beneficiary was entitled to an equal share, New Jersey follows the rule that extrinsic evidence may be considered to interpret the terms of a trust which is ambiguous. In Re Voorhees' Trust,225 A.2d 710, 713 (1967). In an analogous situation, where one of the issues involved the proper allocation of income between beneficiaries, the Court of Chancery stated: In construing the foregoing provisions of the trust deed, I cannot but think that there is manifest wisdom in the old rule that the law will regard, not only that which is expressed, but also that which is done by the parties themselves in furtherance of their agreement. * * * * * * In view of the interpretation placed upon the foregoing provisions *395 of the trust deed by the settlers and beneficiaries themselves, as manifested by their acts of acquiescence and express approval, coupled with a consideration of the other provisions of the trust deed, I am constrained to hold that * * *. [In Re Leupp,108 N.J. Eq. 49, 153 A. 842, 845 (1931).] The extrinsic evidence in this case illustrating intent, which under New Jersey law can be looked to, is the contemporaneous action by the parties, that is, the grantor-trustees in making distributions from the two trusts. In each trust, during each of the years, one of the beneficiaries was ignored altogether and income which was distributed was utilized in varying amounts for the benefit of the other two beneficiaries without any apparent pattern. [6] This clearly evidence a sprinkling of the income among the beneficiaries. On the basis of the New Jersey cases cited, we conclude that the trust instrument must be construed as permitting such sprinkling. We agree with respondent that this is not a case such as Bennett v. Commissioner,79 T.C. 470, 487 (1982), where the grantor-trustees misadministered the express directions of the trust instrument. Based on this interpretation of these trust *396 instruments, we hold that the income of the two trusts is taxable to petitioners under section 674(a). Commissioner v. Buck,120 F.2d 775 (2d Cir. 1941); Stockstrom, et al. v. Commissioner,4 T.C. 5 (1944), affd. 151 F.2d 353 (8th Cir. 1945); Corning v. Commissioner,24 T.C. 907, 913 (1955), affd. 239 F.2d 646 (6th Cir. 1956). There is also some interplay between sections 674 and 677(b) in that pursuant to section 674(b)(1), income which may be used to discharge a support obligation is not taxed under section 674(a) except to the extent that it is so used and is thus taxable under section 677. Under section 677(b), the income of a trust is taxable to the grantor to the extent that such income is applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain. Petitioners argue that under New Jersey law the petitioners had no obligation to pay college tuition and room and board expenses of an unmarried child over 18 or to pay private school expense for an unmarried child under 18. Petitioners further *397 argue that this issue has come up in New Jersey only in controversies between divorced parents and that such cases are inapplicable to this situation. We do not agree. The recent decision of Newburgh v. Arrigo,88 N.J. 529, 443 A.2d 1031 (1982), fully reviews the obligation of parents to continue to provide educational expenses for unmarried children over the age of 18. The Supreme Court of New Jersey held that necessary education is a flexible concept that can vary in different circumstances.
In general, financially capable parents should contribute to the higher education of children who are qualified students. In appropriate circumstances, parental responsibility includes the duty to assure children of a college and even of a postgraduate education such as law school. [Newburgh v. Arrigo,supra at 1038.] In an adversarial situation, courts in New Jersey consider all relevant factors, which include 12 which were enumerated in Newburgh v. Arrigo,supra.It is obvious that many of these factors would have no bearing except in a controversy between divorced parents or between a child and a noncustodial parent. But the support rule is not limited to such divorced parent context. *398 Sakovits v. Sakovits,178 N.J. Super. 623, 429 A.2d 1091, 1095 (1981). While many of these factors described by the New Jersey Supreme Court are not directly applicable to the instant facts, the import to our facts is clearly that petitioners retained the obligation to provide their children with a college education. They were both able and willing to do so, a college education was imminently reasonable in the light of the background, values and goals of the parents as well as the children, and petitioners have brought forward no facts or arguments which would militate against the recognition of this obligation on the part of these particular parents. Newburgh v. Arrigo,supra.
With respect to private high school education, the law of New Jersey is less clear. There is dictum in the case of Rosenthal v. Rosenthal,19 N.J. Super. 521, 88 A.2d 655 (1952). to the effect that a father is not required to provide his son with private school, college or professional training, or with any education beyond public schools, but that dictum as to college and professional education is certainly obsolete. Khalaf v. Khalaf,58 N.J. 63, 275 A.2d 132, 137 (1971), refers with approval to Annot. *399 56 A.L.R. 2d 1207 (1956). While that court's reference to the annotation was with respect to college expenses, the annotation also recognizes the existence of a parental obligation in similar circumstances to provide for private or boarding school education. It would be an anomally to find a support obligation for college tuition for an emancipated child but none for private high school expense for a younger child in the same family. In view of the recent New Jersey cases cited, we do not think the dictum in Rosenthal v. Rosenthal,supra, represents the current view of the New Jersey courts. We believe that private high school education in appropriate cases would be held by the New Jersey courts to be within the scope of parental obligation. Accordingly, we hold that the income of these two trusts, to the extent actually utilized for tuition, room and board for four of the six children of petitioners was used to discharge Dr. Braun's legal support obligations and is therefore taxable to him under section 677(b). In the case of Trust I, the aggregate of the disbursements for tuition, room and board in the three years was slightly less than the aggregate of the gross income. However, *400 in the year 1977 the amounts disbursed exceeded the gross income. In Trust II, the aggregate disbursements exceeded the aggregate gross income by several hundred dollars and in 1977, also, the amount disbursed exceeded the amount of income available for that year. Thus, petitioners have demonstrated an intent to use accumulated income for tuition, room and board where current income was not sufficient. While the small amount of Trust I income not disbursed in 1976 or 1978 may not be taxable to petitioners under section 677(b)(1), it is clearly taxable under section 674(a). Thus, we conclude that there is no tax significance in Trust I to the amount of income not actually utilized in two of the years for the benefit of the children. We hold for respondent. An appropriate order will be entered.
Footnotes
1. The language of item 31 of the stipulation is clarified on page 5 of the transcript. No decision can be entered in this case until the decision in Heitner v. Commissioner,↩ docket No. 347-82, becomes final, following appeal, if any.
2. The word "beneficiary" in the singular obviously refers to the three children collectively who are the beneficiaries of each trust. 3. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Mr. Torres is not named as a trustee in the leases.↩
5. In later years, Mr. Torres became the sole trustee.↩
6. Dr. Braun testified that bills which had to be paid were paid without reference to the child being benefited.↩