**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2577-19

PAUL W. GEORGE,

     Plaintiff-Respondent,

v.

KATHLEEN M. KUTALEK,

     Defendant-Appellant.

_____

         Submitted October 14, 2021 — Decided October 29, 2021

         Before Judges Haas and Mawla.

         On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0820-10.

         Ulrichsen Rosen & Freed, LLC, attorneys for appellant (Derek M. Freed, of counsel and on the briefs; Amanda E. Nini, on the briefs).

         Hoffman & Hoffman, attorneys for respondent (Gary D. Hoffman and Brian L. Hoffman, on the brief).

PER CURIAM

Defendant Kathleen M. Kutalek appeals from a January 15, 2020 order adjudicating post-judgment disputes with plaintiff Paul W. George regarding the following: emancipation and graduate school educational expenses for the parties' older daughter, Jamie; reimbursement of college expenses for their younger daughter, Cynthia; and counsel fees. We affirm in part and reverse and remand in part for further proceedings.

Following a twenty-one-year marriage the parties divorced and entered into a Marital Settlement Agreement (MSA), which required them to "equally share . . . college tuition and expenses for the children not covered by the [children's college savings] accounts, scholarships, work-study funds, stipends, or grants." The MSA required plaintiff to pay child support and contained a provision stating: "Child support shall cease upon a child's emancipation as defined by the operative New Jersey case law at the time of the alleged emancipation."

The children were sixteen and thirteen when the parties signed the MSA. By all accounts both are good students and performed well at competitive secondary and postsecondary schools. During the last two years of college, Jamie expressed an interest in attending dental school, took prerequisite courses for admission to dental school, and passed the Dental Admission Test (DAT) in

A-2577-19

hopes of following in the parties' footsteps.[1]  She gained admission to an Ivy League dental school.

In July 2018, defendant wrote to plaintiff advising him of Jamie's admission to dental school, explaining the costs and the uncovered portion of the expense that would be shared by the parties.  Plaintiff responded as follows: "Paying for graduate school is not something that we bargained for during our divorce, and so I will not be paying for it."  Plaintiff asserted Jamie was now an adult and he was "not financially responsible for her tuition or for any additional costs outside of the child support obligation [he] currently ha[s] to pay."

In February 2019, defendant filed a motion seeking the following relief: compel plaintiff to contribute to Jamie's graduate school education; discovery; compel plaintiff to reimburse her $11,863.45 representing his share of Cynthia's college expenses; and counsel fees.  Defendant certified that each child "performed exceptionally in school."  She claimed "[p]laintiff was involved in both children's college selection process.  He also discussed their performance in school throughout their college attendance."  She noted she and plaintiff attended dental school together and "each had the full . . . financial support of [their] families.  As a result, [they] were able to graduate with minimal debt."

---

[1]  Plaintiff is a dentist and defendant a periodontist.

A-2577-19

Defendant certified Jamie discussed her desire to attend dental school with both parties and "obtained [the parties'] advice and our counsel." According to defendant, Jamie discussed her applications with both parties and plaintiff "accompanied her . . . to some of [the dental] schools" to attend interviews and campus tours. Also, Jamie informed defendant "that [plaintiff] was very supportive in this endeavor, providing her with advice on the important aspects of a school and contact information for recent graduates of dental schools where she was applying." Defendant certified as follows:

> . . . Plaintiff has been an integral part of the . . . dental school selection and enrollment from the very beginning. Based on his central role . . . Jamie developed a reasonable expectation that her father was willing and able to support her ability to attend. At no time during the process did [p]laintiff advise Jamie that he had no intention of contributing to the costs of her dental school.

Defendant argued plaintiff's claim the MSA did not require him to contribute to graduate school "was without merit" and the MSA's "silence [on the matter] is logical" given the children's young age at the time of the divorce. Furthermore, defendant asserted Jamie was not emancipated because she was not self-sufficient "given her full-time enrollment in dental school."

4

Defendant's certification explained Cynthia's expenses totaled $118,039.16 of which the parties paid $94,418.35 from college savings leaving $23,620.81. Defendant certified plaintiff's one-half share was $11,810.41.

Defendant also sought counsel fees noting plaintiff had previously refused to pay for the children's educational expenses on the theory the MSA did not address the obligation, which we rejected in a prior appeal when plaintiff claimed the MSA's silence regarding private school tuition constituted waiver of the expense. George v. Kutalek, No. A-6398-11 (App. Div. May 23, 2014). She argued plaintiff's repeated refusal to contribute, this time towards the dental school expenses, was unreasonable and warranted a counsel fee award.

Plaintiff filed opposition and a cross-motion seeking to emancipate Jamie pursuant to N.J.S.A. 2A:17-56.67 and for other relief not a part of this appeal. He certified Jamie was emancipated because she worked full time for a year, earning approximately $35,000, and lived in an apartment "where she [was] solely responsible for maintaining her residence and feeding, clothing and caring for herself" prior to applying to graduate school. His certification argued Jamie was emancipated at the age of twenty-three pursuant to statutory and case law and was "totally self-sufficient."

A-2577-19

Further, he claimed "[d]efendant never once sought [his] input or advice on any issue involving college choices or costs for either of [their] daughters (nor for graduate school that Jamie decided to attend for that matter) . . . ." Plaintiff claimed defendant poisoned his relationship with the children.

Plaintiff asserted Jamie "did not express a specific interest in dentistry at any time prior to the year after she graduated college. . . . She never once asked [him] what direction [he] thought she should pursue, and [he] merely listened to her considerations on the few occasions [they] spoke." He stated he drove Jamie "to an interview for one dental school, however, [he] was not invited onto the campus nor into the interview." Plaintiff claimed he "had no say or input into [the] choice to go to dental school." He claimed Jamie "had no expectation that [he] would assist her with her graduate school tuition" and he told her he could not afford it. He noted he provided health insurance for Jamie.

Plaintiff also disputed defendant's assertions their parents had helped them during college and dental school. He stated:

> My parents did offer me some limited assistance for living expenses after I started college, but they never paid anything towards my college tuition or books, nor towards my dental school tuition, books or equipment and supplies. . . . I paid back my student loans for graduate school with no assistance from anyone.

A-2577-19

Plaintiff argued "[i]f the [d]efendant wanted our MSA to address graduate school tuition for our daughters, she was perfectly positioned to raise that issue when we negotiated our MSA but chose not to."

Plaintiff's certification did not address the mathematical calculations defendant used to arrive at the $11,810.41 figure, but did attach proofs showing payments he made to the Cynthia's college expense. The motion judge would later analyze these proofs.

Defendant's reply certification disputed plaintiff's assertion that Jamie was financially independent of the parties. She noted plaintiff was not excluded from the graduate admissions process because "[i]nterviews and tours at dental schools are intended only for the applicant and not for parents." Defendant disputed plaintiff's claim Jamie did not express an early interest in dental school, noting "[s]he took prerequisite courses, obtained the necessary faculty recommendations and passed the [DAT] in preparation for her application to dental schools." Defendant further noted Jamie "worked for an interim year in an oral surgery practice to gain experience in a specialty which she [was] considering pursuing. [Her] earnings for 2017 were $13,097 and for 2018 were $12,497." She pointed out Jamie researched dental schools during her employment year and was no longer employed due to the rigorous demands of

7

dental school. She explained the children were young and attending tenth and seventh grade when the MSA was entered and neither party "knew whether one of [the] children would have the propensity and desire to attend graduate school at that time." Defendant noted plaintiff's parents supported him by purchasing a condominium for him and three other dental students to reside in while attending dental school.

Defendant also attached a certification from Jamie which disputed plaintiff's assertions. Jamie certified she informed plaintiff of her interest in pursuing a career in dentistry "beginning in the summer of 2015 . . . [and] in discussions with him generally every one[-]to[-]two weeks thereafter." She explained she took prerequisite courses, the DAT, and "shadowed [plaintiff] in his dentistry practice[,] . . . [and] discussed with him on multiple occasions where [she] was applying, how [her] interviews fared, and what programs [she] was interested in." She stated: "He always seemed very interested in my going to dental school." She noted that during a tour of one school she "discussed with him [her] impressions of that school and others." Further, "[d]uring the application and interview process, [she] kept [him] up to date about the cost of each of the schools. He never initiated [a] discussion of how [she] might be able to finance going to dental school."

A-2577-19

Following oral argument, the motion judge issued an order and written findings. In pertinent part, the order denied the request to compel plaintiff's contribution to dental school and discovery, granted in part defendant's request for reimbursement of Cynthia's college expenses in the amount of $8,935.41, denied defendant counsel fees, and declared Jamie emancipated.

The judge reasoned the MSA defined college tuition and expenses as limited to an undergraduate education and neither party had shown "changed circumstances or any other reasons that the [MSA] should be modified or vacated, [and] the [MSA] not the Newburgh[2] factors, governs this analysis." He noted the MSA's language regarding college was "extensive" and "demonstrate[d] that the . . . parties, both highly-educated and represented by independent counsel, left no stone unturned concerning higher education expenses." He concluded the MSA's definition of college expenses as "undergraduate school, vocational school or like institution" made it "clear that the parties only intended to be responsible for expenses incurred at postsecondary institutions, and that neither parent can compel the other to contribute to a child's graduate education."

---

[2] Newburgh v. Arrigo, 88 N.J. 529 (1982).

A-2577-19

The judge found that even if the MSA did not control, plaintiff was not obligated to contribute because Jamie was emancipated "under New Jersey case law."  He reasoned as follows:

> While Ross[3] and Newburgh leave open the possibility that a court could find a child attending graduate school to be unemancipated, the scarcity of subsequent supporting cases suggest that a court should be disinclined to do so absent any extraordinary circumstances. . . .
>
> The factual record supports a finding of emancipation.  Jamie graduated from college in May of 2017.  After graduating from college, [she] spent over a year working full-time as a surgical assistant.  Jamie worked in this position for over a year before beginning dental school . . . .

Regarding the $11,863.45 contribution sought from plaintiff for Cynthia's expenses, the judge found an exhibit attached to "plaintiff's [r]eply [c]ertification identifie[d] three different payments that plaintiff made toward Cynthia's college tuition and expenses . . . total[ing] $2,928.04."  The judge credited this amount to plaintiff's obligation thereby reducing the sum owed to defendant to $8,935.41.

On appeal, defendant argues the order denying contribution to graduate school and emancipating Jamie cannot stand because there were material factual

---

[3]  Ross v. Ross, 167 N.J. Super. 441 (Ch. Div. 1979).

A-2577-19

disputes requiring a plenary hearing. She argues the judge did not resolve several disputed facts, including: plaintiff's involvement in the dental school admission process; the expectations that plaintiff would contribute; Jamie's economic dependence on the parties and whether she was emancipated; and plaintiff's ability to contribute to the graduate school expenses. Defendant argues the court wrongly concluded silence in the MSA regarding graduate school constituted waiver of the expense. She repeats the argument the children were too young at the time the parties entered the MSA for the parties to contemplate a contribution to graduate school.

Defendant contends plaintiff owed her $11,810.41, not $8,935.41, and the court's calculation was incorrect. She argues the court credited plaintiff with $2,928.04 without explaining where or when the payments were made.

Defendant argues the court improperly denied her counsel fees. She points out the judge did not address any of the Rule 5:3-5(c) factors or provide reasoning for the denial of fees.

We typically defer to factual findings made by Family Part judges when they are supported by "'adequate, substantial, credible evidence.'" Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord

11

deference to family court factfinding." Id. at 413. "Minimally adequate fact finding requires a discussion that demonstrates that the court has heard and addressed the relevant facts and claims under the controlling legal standards." Gordon v. Rozenwald, 380 N.J. Super. 55, 76-77 (App. Div. 2005) (citing Bailey v. Bd. of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001)). "A trial court's rulings in such matters are discretionary and not overturned unless the court abused its discretion, failed to consider controlling legal principles[,] or made findings inconsistent with or unsupported by competent evidence." Id. at 76.

Here, the parties submitted conflicting certifications regarding their disparate interpretation of the MSA. The motion judge's findings were based solely on the parties' written submissions and oral argument. Thus, we do not owe the same degree of deference to the judge's fact finding as we would if the judge had made credibility findings after a plenary hearing. See P.B. v. T.H., 370 N.J. Super. 586, 601 (App. Div. 2004) ("Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility because, having heard the case, and seen and observed the witnesses, the trial court has a better perspective than a reviewing court in evaluating the veracity of witnesses.").

A plenary hearing was necessary because the parties dispute whether they intended to pay for graduate school at the time they entered the MSA. They also dispute whether their actions prior to and once Jamie declared her interest in attending dental school demonstrated an expectation they would contribute to her education. The facts and circumstances relating to both time periods were contentiously disputed and could not be resolved without a plenary hearing.

Furthermore, the motion judge erred when he concluded N.J.S.A. 2A:17-56.67 required Jamie's emancipation and barred plaintiff's obligation to contribute to her graduate school expenses. The statute governs the termination of child support. We have stated: "The payment of college costs differs from the payment of child support for a college student." Jacoby v. Jacoby, 427 N.J. Super. 109, 121 (App. Div. 2012); see Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998) ("Child support and contribution to college expenses are two discrete yet related obligations imposed on parents."). Unlike other jurisdictions, emancipation in New Jersey is a fact sensitive inquiry, Newburgh, 88 N.J. at 543, and concerns whether a child remains financially dependent on a parent or moved beyond their parent's "sphere of influence." Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995). In recognition of these fundamental principles, the statute states:

. . . Nothing in this section shall be construed to:

(1) prevent a child who is beyond [twenty-three] years of age from seeking a court order requiring the payment of other forms of financial maintenance or reimbursement from a parent as authorized by law to the extent that such financial maintenance or reimbursement is not payable or enforceable as child support . . . .

[N.J.S.A. 2A:17-56.67(f).]

Moreover, emancipation is a legal concept, imposed when "the fundamental dependent relationship between parent and child" concludes. See Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006). "It is not automatic and 'need not occur at any particular age . . . .'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 216 (App. Div. 2015) (quoting Newburgh, 88 N.J. at 543). "When the circumstances surrounding the parent-child relationship support a finding the child is emancipated, 'the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support.'" Ibid. (quoting Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997)).

However, the law "provides that once a child reaches the age of majority, now eighteen, N.J.S.A. 9:17B-3, a parent has established 'prima facie, but not conclusive, proof of emancipation.'" Ibid. (quoting Newburgh, 88 N.J. at 543). Once established, "the burden of proof to rebut the statutory presumption of

14

emancipation shifts to the party or child seeking to continue the support obligation." Ibid. The presumption "may be overcome by evidence that a dependent relationship with the parents continues because of the needs of the child." Ibid. (citing Dolce, 383 N.J. Super. at 18). A child's attendance in postsecondary education is one basis to delay emancipation and continue support. See Patetta v. Patetta, 358 N.J. Super. 90, 93-94 (App. Div. 2003); Keegan v. Keegan, 326 N.J. Super. 289, 295 (App. Div. 1999).

"[T]he essential inquiry is whether the child has moved beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own." Llewelyn, 440 N.J. Super. at 216 (alteration in original) (quoting Filippone, 304 N.J. Super. at 308). The "emancipation 'determination involves a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things.'" Ibid. (quoting Dolce, 383 N.J. Super. at 18); see also N.J.S.A. 2A:17-56.67; R. 5:6-9.

Issues of emancipation typically require a plenary hearing, especially "when the submissions show there is a genuine and substantial factual dispute" that the trial court must resolve. Hand v. Hand, 391 N.J. Super. 102, 105 (App.

Div. 2007). Nevertheless, "[a]s is . . . the case in matters that arise in the Family Part, a plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Llewelyn, 440 N.J. Super. at 217 (alteration in original) (quoting Segal v. Lynch, 211 N.J. 230, 264-65 (2012)).

The parties' and Jamie's certifications readily show the facts regarding Jamie's dependency, the parties' intent to financially support her through graduate school, the parties' and Jamie's expectations for such support, and plaintiff's ability to contribute to the schooling were not settled. A plenary hearing followed by factfinding by the judge was necessary. For these reasons we reverse the portions of the order denying defendant's request for a contribution to the graduate school expenses, emancipating Jamie, and denying discovery.

We reach a different conclusion regarding the portion of the order calculating the sum plaintiff was required to reimburse defendant for Cynthia's education expenses. Defendant's arguments on this issue lack sufficient merit to warrant discussion a written opinion. R. 2:11-3(e)(1)(E). We affirm for the reasons expressed by the motion judge.

Finally, we reverse the denial of counsel fees and direct that it be considered with the rest of the issues on remand. "The assessment of counsel

fees is discretionary." <u>Slutsky v. Slutsky</u>, 451 N.J. Super. 332, 365 (App. Div. 2017). As a result, we review such determinations for a clear abuse of discretion. <u>Ibid.</u> In this context, an abuse of discretion may arise when the trial judge has not considered and applied the <u>Rule</u> 5:3-5(c) factors or made inadequate findings to support the award. <u>Clarke v. Clarke ex rel. Costine</u>, 359 N.J. Super. 562, 572 (App. Div. 2003).

The motion judge did not explain why he denied defendant counsel fees. Defendant's motion was partially successful as was plaintiff's cross-motion. Given the lack of findings, we can only assume this was his reason. Because we have remanded the matter for further proceedings, we direct that the judge make findings of fact and conclusions of law on the counsel fee issue pursuant to RPC 1.5(a) and <u>Rule</u> 5:3-5(c) to enable us to conduct a meaningful review of the decision. <u>R.M. v. Sup. Ct. of N.J.</u>, 190 N.J. 1, 12 (2007); <u>see also</u> <u>R.</u> 1:7-4(a).

Affirmed in part and reversed and remanded in part for a plenary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2577-19