741 A.2d 134 (1999)
326 N.J. Super. 289
Callie L. KEEGAN, Plaintiff-Respondent,
v.
Thomas J. KEEGAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1999.
Decided December 8, 1999.
*135 Catherine Ross, Lawrenceville, for defendant-appellant (Deborah A. Rose, Edison, on the brief).
Ulrichsen, Amarel & Eory, for plaintiff-respondent (Dale E. Console, Skillman, on the brief).
Before Judges KEEFE, RODRIGUEZ and LINTNER.
The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
On March 16, 1994, plaintiff (Ms. Keegan) and defendant (Mr. Keegan) were divorced by final judgment following a trial. In April 1998, Mr. Keegan filed a notice of motion for emancipation and modification of alimony and child support. Specifically, Mr. Keegan sought to: (1) emancipate their oldest daughter (Jennifer) who graduated from college in May 1998; (2) emancipate their second daughter (Lea) who ended her full-time college status and began working on a full-time basis; and (3) modify his child support obligation for their youngest daughter (Michele) who was in college at the time.
In response, Ms. Keegan cross-moved seeking: (1) collection of arrears for Jennifer's college expenses; (2) retroactive contribution for Lea's college expenses and denial of her emancipation; and (3) contribution for college expenses associated with Michele.
The central issue raised by this appeal is whether N.J.S.A. 2A:17-56.23a, applies to prevent retroactive increases in child support. We conclude the anti-retroactive support statute's applicability is limited to prevent retroactive modifications decreasing or vacating orders allocated for child support.
On June 3, 1998, after conducting a hearing on cross-motions, the trial judge issued an order that: (1) emancipated Jennifer, retroactive to May 29, 1998; (2) denied emancipation for Lea; (3) modified and reduced child support retroactive to May 29, 1998; (4) ordered Mr. Keegan to pay college expenses of $2,050.00 for Jennifer, $1,291.67 for Lea, and $7,279.58 for Michele; and (5) ordered Mr. Keegan to pay fifty-eight percent and Ms. Keegan to pay forty-two percent of any remaining college expenses for the two daughters not yet emancipated. On or about June 16, 1998, Mr. Keegan filed a motion for reconsideration. On July 17, 1998, Judge Williams denied Mr. Keegan's motion for *136 reconsideration and issued an opinion letter setting forth the court's reasoning.
After the filing of the notice of appeal, a consent order was issued rectifying a miscalculation, thereby correcting the amount Mr. Keegan was to pay for Michele's college expenses from $7,279.58 to $1,365.32.[1]
Mr. Keegan appeals from the trial court's order denying his motion to emancipate his daughter Lea and ordering him to reimburse Ms. Keegan for college expenses incurred for Lea and Michele, raising the following points: (1) the trial court erred by retroactively modifying child support by ordering defendant to reimburse plaintiff for college expenses incurred; (2) in the alternative, the trial court erred by being inconsistent in retroactively increasing the college expense aspect of the child support obligation without retroactively reducing the corresponding direct support, since the law of the case inextricably linked both aspects of child support. (3) The trial court erred by failing to emancipate Lea during the period that she was not attending college on a full-time basis and reporting on her income tax returns that she was independent.
The final judgment of divorce granted the parties joint legal custody of the children and stipulated that Mr. Keegan was to pay "child support in the amount of $305 per week" for the parties' three daughters. It further provided that Mr. Keegan pay seventy percent of Jennifer's college expenses, which Ms. Keegan estimated "to be approximately $70 per month for interest on loans, plus miscellaneous expenses of approximately $1,000 per year." The final judgment was silent as to any potential financial obligations Mr. Keegan might have for Lea's and Michele's college expenses. By ordering him to pay fifty-eight percent of the college expenses already incurred for both Lea and Michele, Mr. Keegan argues that the trial court erred, as its order is contrary to the anti-retroactive provisions of N.J.S.A. 2A:17-56.23a, which provides in pertinent part:
No payment or installment of an order for child support, or those portions of an order which are allocated for child support... shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.
Mr. Keegan urges that fundamental notions of due process and fairness require timely notice before establishing or changing an obligation for support, which includes by its nature the payment of college expenses. Specifically, Mr. Keegan argues that the legislative purpose of the statute was to provide parents with the opportunity to budget their finances to prevent being faced with the sudden obligation to pay arrearages. He also argues that courts should comply with the anti-retroactive statute for all forms of child support modifications, including college education expenses.
Mr. Keegan misconstrues the legislative purpose of the anti-retroactive statute. The statute "was designed to comply with the Omnibus Budget Reconciliation Act of 1986...."[2]Bowens v. Bowens, 286 N.J.Super. 70, 71, 668 A.2d 90 (App.Div. 1995). The federal law conditions compliance "with various federal standards governing child support" in order to receive "federal funding for collection of child support arrearages." Ibid. The statute was intended "to improve effectiveness of child support enforcement." 42 U.S.C.A. § 666. In part, the federal statute prohibits the retroactive modification of "any payment or installment of support under any child support order, ... except that such procedures may permit modification with respect *137 to any period during which there is pending a petition for modification...." 42 U.S.C.A. § 666(a)(9)(C). Prior to the enactment of N.J.S.A. 2A:17-56.23a, New Jersey adhered to the "practice where retroactive modification of support and vacation of arrearages on equitable principles were long permitted...." Bowens, supra, 286 N.J.Super. at 72, 668 A.2d 90 (citation omitted)(emphasis added).
Senators Bradley and Long introduced the Interstate Child Support Enforcement Act, Senate Bill 2404, which added subsection (a)(9)(A-C) to 42 U.S.C.A. § 666 to prohibit the retroactive modification of child support arrearages. 132 CONG. REC. S5303-04 (daily ed. May 5, 1986). There were significant loopholes in the Child Support Enforcement Amendments of 1984, such that "[r]etroactive modification of interstate child support orders poses serious problems in many States."[3]Ibid. In explaining the problem sought to be remedied Senator Bradley said:
What we are seeking to prevent is the practice of a noncustodial parent moving to another State, allowing a substantial debt to his or her child to pile up, and assuming that there will be a retroactive modification of the original order that substantially reduces or totally dismisses the debt.... If a parent's circumstances change, ... this legislation will require that the noncustodial parent officially notify the custodial parent and the court....
....
Debts that accumulate to children must be treated with the highest regard. It should not be possible to evade a debt to one's child simply by moving from State to State.

[Ibid.]
Thus, the purpose of the statute was to remedy the loopholes of interstate child support enforcement laws in order to benefit children, not to eliminate any perceived unfairness as suggested by Mr. Keegan. Nothing in the legislative history suggests that the law was enacted to protect "parents" from retroactive modifications increasing support obligations where equitable. See Lanza v. Lanza, 268 N.J.Super. 603, 607, 634 A.2d 152 (Ch.Div.1993)(ordering a retroactive increase in defendant's child support to reflect substantial increase in one year's earnings due to increased commissions). Accordingly, we find that the trial court's order requiring Mr. Keegan to reimburse Ms. Keegan $1,291.67 for Lea's college expenses[4] and $1,307 for Michele's first year at American University is not contrary to the anti-retroactive provisions of N.J.S.A. 2A:17-56.23a and Mr. Keegan's contention that he should have received a corresponding credit reducing his previous support payments, by an amount equal to his obligation to pay college expenses already incurred, is without merit.
We also agree with Judge Williams's determination not to emancipate Lea for the period of time that she was a full-time employee on hiatus from college. At the time of the motion in June 1998, Lea was twenty years old. She had terminated her full-time status as a college student at Beaver College in December 1996, after her third semester. Her cumulative grade point average at the time she left school was 2.36. Lea returned home *138 to live with Ms. Keegan. Shortly thereafter, Lea was employed with a temporary agency on a full-time basis from January 21, 1997, through June 3, 1997. She then obtained full-time employment with Corestates Bank from June 16, 1997, through June 13, 1998. Her annualized salary as evidenced by her 1997 W2 form was approximately $20,000. On her 1997 tax return, Lea indicated that neither parent could claim her for purposes of their returns.
The trial court considered that Lea's employment with Corestates was going to terminate in June 1998, due to a corporate reorganization resulting from the bank's merger with First Union. During this time, Lea was attending Mercer County Community College on a part-time basis. Lea then planned to matriculate at Mercer County on a full-time basis in pursuit of completing the school's Physical Therapist Assistant Program.
Addressing Lea's status, Judge Williams noted that courts today hold that "a brief hiatus between high school and college is common place," such that "a child's right to parental contribution to college should not be summarily determined." Judge Williams explained that this holds true for children who take a brief hiatus from educational pursuits as well. Judge Williams ultimately denied Mr. Keegan's motion to declare Lea emancipated because Ms. Keegan "presented evidence which indicates that Lea has not moved beyond the sphere of influence of her parents." We agree with Judge Williams's application of the facts of Mr. Keegan's emancipation claim for Lea to the factors enumerated by the Supreme Court in Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982).
Finally, Mr. Keegan argues that the trial court should have emancipated Lea during the period of time that she was working and changed her status to that of unemancipated upon return to school. However, as pointed out by Ms. Keegan, Mr. Keegan's motion for emancipation did not seek emancipation effective from the date Lea obtained full-time employment, but simply sought emancipation. Importantly, Mr. Keegan did not raise the issue of retroactively emancipating Lea as of December 1996, until he filed his motion for reconsideration of the court's June 3, 1998, order. "When a declaration of emancipation is entered, all a judge has before him are the facts as they exist at that time." Sakovits v. Sakovits, 178 N.J.Super. 623, 631, 429 A.2d 1091 (Ch. Div.1981). Ms. Keegan's cross-motion seeking to continue Lea's unemancipated status, given the termination of her employment and intention to become a full-time student, essentially accomplishes what Mr. Keegan sought by his motion for reconsideration, i.e., a declaration that Lea be considered unemancipated as of the time her status changes from full-time employee to full-time student. We therefore agree with Judge Williams's denial of Mr. Keegan's motion for reconsideration.
Affirmed.
NOTES
[1] The consent order renders moot the issue raised on appeal concerning the trial court's miscalculation of Mr. Keegan's contribution to Michele's college expenses.
[2] P.L. 99-509, 100 Stat. 1874 to 2078, codified at 42 U.S.C.A. § 666(a)(9)(C).
[3] Senator Bradley noted that although New Jersey's "interstate child support cases" comprise "only 30 percent of the caseload ... these interstate cases comprise 70 percent of the complaints about child support enforcement." 132 CONG. REC. S5303-04 (daily ed. May 5, 1986). The Senator cited a specific example where debts of over $4,000 for a child in New Jersey was "reduced to $400 by other States." Ibid.
[4] This represents Mr. Keegan's share of Lea's expenses at Beaver College only. The court did not hold him responsible for Lea's expenses at Mercer County Community College because she was employed on a full-time basis, while attending Mercer County part-time.