64 A.3d 247

WINER BENJAMIN, PLAINTIFF, v. LATIFAH
BENJAMIN, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided October 19, 2012.

*Winer Benjamin,* plaintiff, pro se.

*Latifah Benjamin,* defendant, pro se.

L.R. JONES, J.S.C.

When a custodial parent wishes to relocate with a child to another state, and will be leaving existing employment in New Jersey, must he or she already have another job in place in the new state before the court permits relocation?

The court holds in this case that having a guaranteed job in another state is not a mandatory prerequisite for relocation. However, the likelihood that the custodial parent can provide the child with a financially stable household in the new state, including obtaining employment as necessary, is a relevant factor in determining whether a proposed relocation is reasonable or inimical to a child's interests.

Plaintiff and defendant divorced in 2008. Pursuant to their matrimonial settlement agreement, the parties share joint legal custody of their eleven year old daughter, S.B., with defendant serving as primary residential custodian and plaintiff having parenting time.[1]

In 2012, defendant filed a post-judgment motion for permission to relocate with S.B. from New Jersey to North Carolina. Plaintiff objected to the proposed removal, and filed a cross-motion for transfer of residential custody of the child to his care. Following a period of pre-trial discovery and unsuccessful mediation, the matter proceeded to a plenary hearing.

---

[1] The trial evidence reflected that plaintiff had primarily exercised parenting time on alternate weekends. Previously, plaintiff also sometimes saw the child for a mid-week dinner visitation, but that practice is no longer a regular part of plaintiff's parenting routine.

At the hearing, one of plaintiff's principal arguments against the proposed relocation was that defendant had longtime employment in New Jersey, but no guaranteed employment awaiting her in North Carolina. Inferentially, plaintiff contended that without a specifically identified job, defendant might remain unemployed in North Carolina to the child's financial detriment.

 Initially, the court notes that even if defendant does not presently have a guaranteed position awaiting her in North Carolina, there is no express, absolute requirement under the law that a custodial parent requesting relocation must have a specific job or promise of guaranteed employment in the new state. The criteria for analyzing a custodial parent's application for removal is generally set forth in the case of *Baures v. Lewis*, 167 *N.J.* 91, 118, 770 *A.*2d 214 (2001), which establishes that a moving party bears the burden of proving that 1) there is a good faith reason for the proposed move, and 2) the proposed move will not be inimical to the child's interests. In making a removal determination, a court must address the following factors:

1. the reasons given for the move;
2. the reasons given for the opposition;
3. the past history of dealings between the parties insofar as it bears on the reasons advanced by both parties for supporting and opposing the move;
4. whether the child will receive educational, health and leisure opportunities at least equal to what is available here;
5. any special needs or talents of the child;
6. whether a parenting time schedule and communication schedule can be developed that will allow the non-custodial parent to maintain a full and continuous relationship with the child;
7. the likelihood that the custodial parent will continue to foster the child's relationship with the non-custodial parent if the move is allowed;
8. the effect of the move on extended family relationships here and in the new location;
9. if the child is of age, his or her preference;
10. whether the child is entering his or her senior year in high school at which point he or she should generally not be moved until graduation without his or her consent;
11. whether the non-custodial parent has the ability to relocate; and

12. any other factor bearing on the child's interest.

*Id.* at 117 [770 *A.*2d 214].

As noted, nowhere on this list is there a specific, mandatory requirement of guaranteed, out-of-state employment before a court can grant a removal application. For certain, there are many hypothetical factual scenarios where there would be little practical sense in imposing such an absolute pre-condition upon every custodial parent's ability to move. For example, if a moving parent (a) has significant financial support from other family members such as parents or a new spouse, or (b) has traditionally been a homemaker with young children and no remarkable work history, or (c) is disabled and out of the labor force, or (d) is independently wealthy, then in such instances there may be no compelling basis to require mandatory employment for such an applicant.

Even in cases where none of the above scenarios exist, however, there is still a fundamental problem with imposing a requirement upon every moving party to first demonstrate a guaranteed offer of employment in the new state. As the parties in this case have learned firsthand, there is often an unfortunate time gap of many months between the date a custodial parent files a motion for relocation and the date a court can actually adjudicate the matter with finality. Because of this gap, it is often highly impractical for a custodial parent to obtain a concrete job offer from an out-of-state employer when he or she does not even know if and when court-approved relocation may occur.

The court takes judicial notice of the severe economic downturn in the United States. *Piscitelli v. Classic Residence,* 408 *N.J.Super.* 83, 114, 973 *A.*2d 948 (App.Div.2009). Regarding employees who are looking for work, supply often far exceeds demand in countless fields. For every open position, there may be dozens or even hundreds of qualified job-seekers aggressively fighting to fill a seat.

Given the reality of these present economic times, it may be highly unrealistic to expect an employer in another state to offer

guaranteed employment to an arms-length job applicant who (a) still lives in New Jersey, (b) is in the middle of ongoing family court litigation which may last for months, and (c) cannot reasonably tell the employer whether and when he or she *might* be able to start work. Moreover, even if an employer is willing to offer a job to a proposed employee, it may be wishful thinking to expect that such employer will then be willing to hold the position open indefinitely while the applicant battles through his or her own family court issues in New Jersey. Absent a special, pre-existing relationship between the proposed employer and proposed employee, such as a family relationship or strong friendship, an employer might have very little incentive to hire this type of applicant over other candidates who are ready, willing, and able to start work immediately. While there may always be some exceptions, such as if the applicant has rare and highly specialized skills in great need by the employer, perhaps the more likely scenario is that the employer will move on and hire someone else who can immediately fill the company's present needs.

In defendant's motion, she succinctly focused on the "Catch-22" dilemma of a removal applicant who is attempting to obtain guaranteed employment in another state. Specifically, defendant stated in her certification, *"I have a few potential job offers, but at this time I cannot give them an answer until the court allows us . . . to relocate or not."* Further, at the plenary hearing, defendant actually presented evidence of a prior written offer of employment, which she did in fact secure during the pendency of the family court litigation. Specifically, an employer in Charlotte, North Carolina, had offered defendant a position as an office manager with a starting salary of $42,500 plus benefits, including sick leave, vacation, and personal days. Unfortunately, defendant could not immediately accept the position because of the uncertainty of the duration and outcome of the family court litigation in New Jersey. Further, due to the gap in time between the filing of the motion and the hearing date, S.B. had to remain in New Jersey to commence a new school year. Defendant testified

that under these circumstances, while she still wished to relocate to North Carolina, she now wished to delay the move until June 2013 so as not to disrupt S.B.'s education by pulling her from her current class in the middle of a school year.

Chronologically, it is noted that defendant filed her application for relocation from New Jersey to North Carolina on May 23, 2012. The clerk's office scheduled the motion return date for June 22, 2012. Prior to the return date, plaintiff filed his opposition and a cross-motion for custody. Based upon plaintiff's objection to the proposed move and contested issues of fact between the parties, the court granted both parties a reasonable period for pre-trial discovery, over a period of four months. Under court order, each party had the opportunity to serve interrogatories and document requests under *Rule* 5:5–1(a), conduct depositions under *Rule* 5:5–2(c), and retain experts under *Rule* 5:3–3. Further, the parties were both directed to attend mandatory mediation under *Rule* 1:40–5 and *Rule* 5:8–1. Still further, the court scheduled and conducted an *in camera* child interview with S.B. under *Rule* 5:8–6. A plenary hearing was necessary as well,[2] which concluded on October 19, 2012, approximately five months after defendant originally filed her motion to relocate.

The court finds that, given the inherent delays in the litigation process, it is inequitable to require the custodial parent in this case to demonstrate guaranteed employment as a pre-condition to relocation. The most practical and relevant inquiry is not whether the moving parent has a guaranteed job, but rather whether she has a reasonable plan for providing the child in her care with an economically stable home in the new state. In such an analysis, a

---

[2] While not every removal case automatically requires a plenary hearing, *see Barblock v. Barblock*, 383 *N.J.Super.* 114, 122, 890 *A.2d* 1005 (App.Div.2006), such hearing is in fact generally required when the submissions show there is a genuine and substantial factual dispute regarding the welfare of a child. *See Shaw v. Shaw*, 138 *N.J.Super.* 436, 440, 351 *A.2d* 374 (App.Div.1976). Based upon this standard, it is perhaps more the rule than the exception that a contested removal case will require a plenary hearing for adjudication.

party's employability, and work history are relevant to the overall financial reasonableness of the custodial parent's relocation plan. As set forth in *Baures, supra,* 167 *N.J.* at 117, 770 *A.*2d 214, the final factor for consideration is "any other factor bearing on the child's interest." This extremely broad language permits a court of equity to exercise its discretion to consider points and issues beyond those expressly listed in *Baures.*

Hypothetically, if a custodial parent seeks to move a child from a very stable economic environment in New Jersey to a very unstable economic environment elsewhere, such move may potentially be financially inimical to a child's interests. However, there are times when a custodial parent may reasonably wish to relocate to another state specifically because he or she does not presently have a well-paying job or a satisfactory degree of economic stability in New Jersey. There may well be greener pastures of financial opportunities elsewhere.

In terms of a custodial parent planning his or her long-term financial stability, there are occasions when leaving a present job is in fact a reasonable and wise decision. Logical monetary planning involves considerations far beyond where one might be able to make the highest paycheck that particular week. For example, a person may wish to leave a job of limited growth potential and move to a new area to work in the same or similar occupation at the same or lesser salary, but where the cost of living is cheaper, or where other economic advantages exist. Such advantages may include proximity to family who can provide day care, availability of housing, a less competitive job market, and other important considerations.

Alternatively, a person may very legitimately decide to leave a job of limited growth opportunities to seek re-training or further education in an entirely new career. Further, one may reasonably decide to forego the benefit of a steady paycheck and take the risk of starting his or her own business, with the possibility of substantial financial rewards in the long run. Indeed, many of the greatest financial success stories in this country's history were

written by risk-takers who rejected the lure of a safe but limited job working for someone else, and instead used their innate talents to start from scratch and achieve financial success and stability far beyond that which could have ever been obtained by nesting in the security and limited opportunities of prior employment.

Reciprocally, however, there have also been many instances of employees who unreasonably quit their jobs to take on major financial risks which ultimately backfired, leaving them either bankrupt or otherwise unable to pay their bills and provide any degree of ongoing financial stability for their families. Such a situation can be very extremely destabilizing to a dependent child's home life and inimical to the child's security and emotional health.

In short, there is no convenient crystal ball which can tell people in advance whether it is wise or unwise to leave the security of present employment. What is clear, however, is the United States is a country like no other, where people generally have the freedom and right to make tough choices, take risks, and pursue their paths to potential prosperity and happiness. However, when there is a child involved, decisions on whether or not to take certain life-altering and financially uncertain paths always must be considered with the welfare of that child in mind.

In the context of a contested removal application between divorced parties, the court has an obligation under parens patriae jurisdiction to consider whether a proposed move is inimical to the child's interests. This analysis inherently includes consideration of economic stability, and whether the custodial parent's plan to move is financially reasonable, rather than part of an unreasonably risky, impulsive, spur-of-the-moment decision.

In the present case, the court finds defendant lives in North Jersey and has steadily worked as an assistant property manager for the last five years. She earns approximately $40,000 a year. However, she does not anticipate any significant salary increases at her New Jersey position in the near future. Further, she

presently is not a homeowner. Rather, she rents a two and one-half bedroom apartment in Union, where she lives with the parties' daughter and her present husband, and his fifteen year old son, G.B. The rent is approximately $1280 per month, and she shares expenses with her husband, who works as a department head at Home Depot.

As noted, defendant does not have guaranteed employment in North Carolina. However, the court finds that she is reasonably likely to obtain suitable employment in North Carolina and create a financially responsible home life there if given a reasonable opportunity to do so. The court reaches this conclusion for the following reasons: First, she has a longtime history of steady, stable employment in New Jersey, reflecting positively upon her financial responsibility. Second, she has provided evidence that during the course of this case, she sought and was able to obtain at least one offer of reasonable employment in North Carolina, which would have provided her with a higher starting salary than she presently makes at her New Jersey job. Third, she has marketable management skills. Fourth, she presents as an intelligent and articulate individual who is focused and who has a record of responsibly caring for the child in her court-ordered primary care, both financially and otherwise.

The court further notes that defendant has other financial support, since her present husband also works and brings money into the household. Further, he works as a department head for a nationally recognized chain store; therefore his potential employability in another state, either with the same employer or a competitor, logically increases as well.

Still further, defendant impresses the court with the sincerity and financial foundation of her good faith reason to move. Most importantly, she desires to ultimately buy a home for her family in North Carolina, as she cannot afford to do so in New Jersey. Pursuant to *N.J.R.E.* 201, the court takes judicial notice that pursuit of home ownership is a very logical and reasonable component of planning for a family's future economic security. Such

potential benefits of home ownership include the building of equity, increased borrowing power, tax advantages, long term appreciation, and the opportunity to create strong roots and vested stability in one's home and surrounding community.

The court further notes that defendant has relatives in North Carolina who have close relationships to the child. In fact, with both parties' consent, the child has previously spent portions of several summers in North Carolina with these relatives, increasing her familiarity with the environment there. The relatives can further provide defendant with at least short-term financial assistance in terms of helping with day care and assisting defendant in obtaining short term rental housing until defendant establishes herself and can purchase a house in North Carolina.

In this case, the child at issue is fortunate to have two loving, caring parents. Although divorced, plaintiff and defendant have each demonstrated a history of commitment to their child, financially and otherwise. However, defendant is the primary residential custodian, and has the right under *Baures* to seek relocation. While she may be leaving a steady job and paycheck in New Jersey, and may not presently have guaranteed employment in North Carolina, the court nonetheless finds her relocation application to be reasonable, and her employability potential in North Carolina to be very legitimate. Further, the court does not find any aspect of defendant's proposed move to be irresponsible, impulsive, or financially inimical to the child's interests.

Accordingly, the court shall permit defendant to relocate with the parties' child from New Jersey to North Carolina at the conclusion of the child's present school year.