**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2611-23

JAMES NEVE,

     Plaintiff-Respondent,

v.

SHARON LIVINGSTONE,

     Defendant-Appellant.

_____

Argued September 30, 2025 – Decided October 20, 2025

Before Judges Gilson, Firko, and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1364-06.

Toni Belford Damiano argued the cause for appellant (Damiano Law Offices, attorneys).

Appellant filed a pro se brief.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial matter, defendant Sharon Livingstone appeals from a March 14, 2024 Family Part order denying, in part, her motion to enforce the terms of the October 17, 2007 property settlement agreement (PSA) between her and her former spouse, plaintiff James Neve. This matter returns to us following our July 13, 2023 remand for the court to: (1) "make further factual findings to determine whether an . . . adjustment of plaintiff's child support obligations" for the period April 1, 2018 through the date of their oldest child's emancipation in May 2021, was appropriate; (2) make "additional findings . . . regarding defendant's right to any" gains on the $111,000 owed to her under the PSA for stock options exercised by plaintiff in 2011 and "held by plaintiff since that time;" and (3) consider defendant's request for counsel fees "anew." Neve v. Livingstone, No. A-2996-21 (App. Div. July 13, 2023) (slip op. at 19-23).

We reverse in part and vacate in part because: (1) the court failed to make the required factual findings regarding child support; (2) the court incorrectly determined defendant was not entitled to gains realized on the $111,000 under the PSA; and (3) defendant's request for counsel fees must be reconsidered anew based on the determination of the issues on remand.

I.

The parties are familiar with the facts of the case as set forth in our prior opinion. Neve, slip op. at 2-12. We provide a summary of the facts relevant to this appeal.

The parties were married in 1997 and divorced on October 17, 2007. The PSA was incorporated into their judgment of divorce (JOD). They have two children who are now adults. Under the terms of the PSA, the older child was emancipated in May 2021, and the younger child was emancipated in June 2024.

At the time of the divorce, plaintiff owned unexercised stock options granted by his employer. Paragraph 9.1 of the PSA provides:

> [Fifty percent] of the [s]tock options . . . in [plaintiff's] name acquired during the marriage, both vested and unvested, pursuant to the attached schedule, shall be held in trust by [plaintiff] and exercised upon written request from [defendant]. Any gains . . . based on [defendant's] shares would also be available to her at any[]time now and in the future.[1]

Paragraph 11.1 of the PSA provides:

> See [paragraph] 9.1 above. [Plaintiff] shall retain all employment related plans, including but not limited to his . . . employee stock option plan . . . free and clear of any interest of [defendant], except that [defendant]

---

[1] The referenced "schedule" is not included in the record on appeal. Neither party disputes the $111,000 represented proceeds from the exercise of stock options in plaintiff's name.

shall receive [fifty percent] of all . . . unexercised stock options . . . granted during the marriage. [Defendant] shall receive the net value, after taxes and costs, when sold or exercised.

It is undisputed plaintiff exercised his stock options in 2011, and defendant's fifty percent share was $111,000. It is also undisputed plaintiff held the $111,000 from 2011 until 2022, when it was paid to defendant in accordance with the court's April 19, 2022 order.

In 2010, the parties reconciled. They separated permanently in 2015 and entered into a lease agreement in which plaintiff contends the parties agreed defendant and the children would live rent-free in a townhouse plaintiff owned in lieu of plaintiff paying child support. The JOD was not amended to reflect this modification.

In 2017, plaintiff commenced proceedings to evict defendant and their children from the townhouse. In response, in April 2018, defendant filed a cross-motion to recalculate child support "retroactive to . . . 2015" because plaintiff experienced a "substantial change" in income and "child support ha[d] not been reviewed in the [ten plus] years since [their] divorce." On August 28, 2019, the court ordered defendant to vacate the townhouse and plaintiff to pay defendant $3,200 per month in child support "[u]pon [her] relocation from the [t]ownhouse," pending a plenary hearing.

4

In September 2021, defendant filed a motion to enforce the PSA and for a plenary hearing to determine an appropriate child support award because plaintiff unilaterally reduced his child support payments by fifty percent. Defendant sought payment of the $111,000 she was owed for the stock options, "plus market gains on the funds." She also sought unpaid amounts due under the PSA for school supplies, clothing, and gifts.

Plaintiff argued he reduced his child support payments because the older child was emancipated in May 2021. Plaintiff argued he did not pay child support from 2015 until 2019 because the parties agreed "all child support was replaced in lieu of living in the townhome." He also claimed the $111,000 from the stock options was held in a cash account and there was no gain realized at any point. Plaintiff argued defendant was owed only $111,000.

On April 19, 2022, the court entered an order granting defendant's motion in part and ordered plaintiff to pay defendant $111,000 for her share of the stock options and $2,145 per month in child support effective from the date of the older child's emancipation in May 2021. The court denied defendant's request for "market gains" on the $111,000, as well as her application for counsel fees. Defendant appealed from that order.

A-2611-23

On July 13, 2023, we vacated the order "as it relate[d] to defendant's request for counsel[] fees because [the court] limited its analysis to factor three [of Rule 5:3-5(c)], and in doing so failed to address all relevant factors, such as defendant's financial situation." Id. at 19. Specifically, the court did not consider that "defendant established her significant financial distress" and its own finding of "'a stark disparity in the . . . economic circumstances of the parties.'" Ibid. We ordered the court to "consider defendant's request for counsel fees anew." Ibid.

We affirmed the court's "calculation of child support payments which required plaintiff to pay $2,145 . . . as of the date of [the older child's] emancipation." Id. at 20. We vacated the order, in part, and remanded, "for the court to make further factual findings to determine whether an earlier adjustment of plaintiff's child support obligations, in light of defendant's 2018 request, [was] appropriate" because "[t]he court failed to address . . . whether it was appropriate to modify child support based on an earlier date." Id. at 20-22. We further ordered the court to determine "the extent to which [plaintiff] may owe defendant additional funds for presents and school supplies, as required by the PSA." Id. at 20.

A-2611-23

We also vacated the order to the extent it denied defendant's request for gains on the $111,000. We required the court to make "additional findings" "regarding defendant's right to any" gains and specifically "consider what interest, if any, defendant is entitled to pursuant to the PSA." Id. at 23.

The court conducted a hearing on February 29, 2024, at which defendant and plaintiff were the only two witnesses who testified. On March 14, the court entered an order denying defendant's "claim for market gains on the $111,000" and her "request for the court to retroactively award child support arrears." It granted defendant's "claim for $29,600 representing school supplies and gifts from 2015 to 2023." The court denied her application for counsel fees.

As to the issue of gains on the $111,000, the court found defendant "knew the money was in an account and being held by [] plaintiff" and she "never asked for it to be transferred." It did "not find defendant's testimony credible regarding what date she demanded the money or regarding conversations between her and plaintiff which led her to assume he would be investing the money on her behalf." Based on that, the court denied her "claim for market gains."

On the issue of child support, the court summarized the procedural history leading to the April 19, 2022 order, and stated:

> Based on the parties' testimony at the initial hearing and documents presented to the court, this court found the

7

amount of child support set [in the August 28, 2019 order] was reasonable and defendant was receiving reasonable child support prior to the court's April 19, 2022 [o]rder. Accordingly, this court declines to apply the child support calculation in its April 19, 2022 [o]rder retroactively to the date of defendant's application to the court. Defendant's claim for backpay of child support to be recalculated from the date of defendant's application is [denied].

This appeal followed. At the time defendant filed her appellate brief, she was self-represented. She argued the court erred by: (1) failing to set an appropriate child support amount from 2017 through 2022; (2) failing to consider that the amount she was due for plaintiff's 401(k) would be withheld for fifteen years; (3) failing to address the gains defendant would have earned from the stock options had plaintiff not withheld the funds; and (4) failing to fully consider her claim for counsel fees.

At oral argument, defendant's counsel clarified the issues on appeal. They are limited to: (1) child support for the periods April 1, 2018, through August 30, 2019, and from the date of the older child's emancipation in May 2021 through June 1, 2024; (2) any gains earned by plaintiff on the $111,000 from 2011 through 2022; and (3) counsel fees. Counsel represented defendant is not seeking additional child support for the period September 1, 2019, through the date of the older child's emancipation. Counsel also withdrew defendant's

appeal relating to the equitable distribution of plaintiff's 401(k) because we affirmed that award in our July 13, 2023 opinion.

II.

We reject defendant's appeal of the child support award for the period beginning on the date of the older child's emancipation in May 2021 through June 1, 2024, because we affirmed that aspect of the court's April 19, 2022 order in our July 13, 2023 opinion. That leaves April 1, 2018, through August 30, 2019, as the only period at issue for purposes of recalculating child support.

We vacate the March 14, 2024 order to the extent it denied defendant's claim for child support because the court fell short of satisfying our mandate on remand. Our July 13, 2023 opinion required significantly more than merely declaring "defendant was receiving reasonable child support prior to the court's April 19, 2022 [o]rder." Indeed, the court was instructed to "make further factual findings to determine whether an earlier adjustment of plaintiff's child support obligations, in light of defendant's 2018 request, [was] appropriate." Id. at 20. The court did not do that fact finding.

Moreover, the court was not instructed to determine whether it should "apply the child support calculation in its April 19, 2022 [o]rder retroactively." It was directed to determine whether defendant was entitled to an adjustment of

9

plaintiff's child support obligations for the period April 1, 2018, until the date the older child was emancipated in May 2021.

Relatedly, the court also did not provide a sufficient statement of reasons explaining the basis of its decision. R. 1:7-4(a) (requiring trial courts to make sufficient "find[ings] [of] . . . facts and state its conclusions of law"). "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980). "Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Ibid. "'Meaningful appellate review is inhibited unless the [court] sets forth the reasons for [its] opinion.'" Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)).

Relevant to this case on remand, "[u]nder N.J.S.A. 2A:17-56.23(a), a court may retroactively establish or increase one's child support obligation back to at least the filing date of the application, or forty-five days earlier upon service of advance written notice." Cameron v. Cameron, 440 N.J. Super. 158, 166 (Ch. Div. 2014); see also J.S. v. L.S., 389 N.J. Super. 200, 206-07 (App. Div. 2006) ("This court has concluded that '[n]othing in the legislative history suggests that the law was enacted to protect 'parents' from retroactive modifications

increasing support obligations where equitable.'" (quoting <u>Keegan v. Keegan</u>, 326 N.J. Super. 289, 294 (App. Div. 1999))).

In high income cases where the combined income of the parents exceeds the maximum amount under the Child Support Guidelines, as it clearly does in this case, the court must calculate child support using the maximum support under the Guidelines and "combining that preliminary figure with a supplemental award subject to the provisions of N.J.S.A. 2A:34-23(a). . . ." <u>Pascale v. Pascale</u>, 140 N.J. 583, 595 (1995).

N.J.S.A. 2A:34-23(a) directs a court to consider the following factors in determining child support in high income cases:

> 1. Needs of the child;
>
> 2. Standard of living and economic circumstances of each parent;
>
> 3. All sources of income and assets of each parent;
>
> 4. Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
>
> 5. Need and capacity of the child for education, including higher education;
>
> 6. Age and health of the child and each parent;

7. Income, assets[,] and earning ability of the child;

8. Responsibility of the parents for the court-ordered support of others;

9. Reasonable debts and liabilities of each child and parent; and

10. Any other factors the court may deem relevant.

On remand, the court shall determine whether an adjustment of plaintiff's child support obligations for the period April 1, 2018, through August 30, 2019, is appropriate. In doing so, the court "must consider" the statutory factors enumerated in N.J.S.A. 2A:34-23(a). Caplan v. Caplan, 182 N.J. 250, 271 (2005). The primary consideration in a high-income case is the reasonable needs of the child based on the standard of living of the parties. Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002). The court must also provide "clearly delineated and specific findings addressing the statutory factors relevant to any award or modification of child support." Loro v. Colliano, 354 N.J. Super. 212, 220 (App. Div. 2002).

## III.

We are convinced the court incorrectly determined defendant was not entitled to any gains realized on the $111,000 that was owed to her pursuant to the PSA and held by plaintiff from 2011 until 2022. We review "[a] trial court's

12

interpretation of the law," including legal consequences drawn from established facts, de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"Absent 'compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the PSA,' a court is generally bound to enforce [them]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 589 (App. Div. 2016) (quoting Quinn v. Quinn, 225 N.J. 34, 55 (2016)). Settlement agreements, even in matrimonial matters, are governed by contract principles. J.B. v. W.B., 215 N.J. 305, 326 (2013).

When interpreting a PSA, the "court must discern and implement the common intention of the parties," and "enforce [the mutual agreement] as the parties intended.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). "'[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn, 225 N.J. at 45).

Paragraph 9.1 of the PSA provides "[fifty percent] of the [s]tock options . . . in [plaintiff's] name acquired during the marriage, both vested and unvested, pursuant to the attached schedule, shall be held in trust by [plaintiff]

and exercised upon written request from [defendant]." That paragraph also provides, "[a]ny gains . . . based on [defendant's] shares would also be available to her at any[]time now and in the future." Paragraph 11.1 of the PSA specifically incorporates the terms of paragraph 9.1 and states "[defendant] shall receive [fifty percent] of all . . . unexercised stock options . . . granted during the marriage. [Defendant] shall receive the net value, after taxes and costs, when sold or exercised."

The court's conclusion that defendant is not entitled to any gains because she "never asked for it to be transferred" finds no support in the terms of the PSA. Applying the plain language of the PSA, defendant is entitled to $111,000 representing fifty percent of the stock options plaintiff exercised in 2011 and "[a]ny gains . . . based on [defendant's] shares . . . in the future." Therefore, to the extent there were any gains on the $111,000 from the time it was received by plaintiff in 2011 until the time it was transferred to defendant in 2022, defendant is contractually entitled to those gains pursuant to the express terms of the PSA.

We reverse the court's March 14, 2024 order to the extent it denied defendant's claim for gains on the $111,000. On remand, the court shall allow

14

adequate time for the parties to conduct fact and, if necessary, expert discovery to determine the amount, if any, of the gains to which she is entitled.

## IV.

We vacate the March 14 order to the extent it denied defendant's application for counsel fees. The court's decision on that application must await the resolution of the issues raised in defendant's motion to enforce the PSA on remand. Of course, when addressing a counsel fee application, the court should consider the factors set forth in Rule 5:3-5(c). In particular, the court should consider the extreme disparity in the parties' financial circumstances and ability to pay their own fees in this case, as well as the fact that defendant has been forced to engage in extensive motion practice and prosecute two appeals to protect and enforce her rights under the PSA.

## V.

Finally, we direct that this matter be assigned to a different judge on remand to avoid the appearance of bias or prejudice. See Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (directing remand "to a different judge . . . to avoid the appearance of bias or prejudice based upon the judge's prior involvement with the matter"); see also N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986) ("Because the trial judge has heard this

15

evidence and may have a commitment to its findings, we believe it is best that the case be reconsidered by a new fact-finder").

Vacated in part and reversed in part. Remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division